WILDE & ASSOCIATES
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone:  702 258-8200
bk@wildelaw.com
Fax:  702 258-8787

and

MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

US Bank NA
09-75261

Electronically Filed on _____

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK-S-09-18736-MKN |
| Richard Osorio and Veronica I. Osorio | Date: 8/26/09<br>Time: 1:30pm |
| Debtors. | Chapter 7 |

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

US Bank NA, Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), alleges as follows:

1.      That on or about May 26, 2009, the above named Debtors filed their current Chapter 7 Petition in Bankruptcy with the Court.

2.      Secured Creditor is the current payee of a promissory note dated May 2, 2005 in the principal sum of ("Promissory Note" herein), secured by a Real Property Trust Deed of same date

("Trust Deed" herein) upon property generally described as 6857 N. Chieftain St., Las Vegas, NV 89149, and legally described as follows:

> Lot 19, in Block 1 of ASTORIA AT TOWN CENTER-SOUTH, as shown by Map thereof on File in Book 115 of Plats, Page 58, in the Office of the County Recorder of Clark County, Nevada, and Amended by Certificate of Amendment Recorded May 19, 2004 of Official Records as Document No. 03225

("subject property" herein).

    3.    Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtor.

    4.    With respect to secured Creditor's trust deed the following is due and owing:

| | |
|---|---|
| Unpaid Principal Balance | $214,677.20 |
| 3 Monthly Payments at $1,005.71 (September 1, 2008-November 1, 2008) | $ 3,017.13 |
| 8 Monthly Payments at $1,021.91 (December 1, 2008-July 1, 2009) | $ 8,175.28 |
| Accrued Late Charges | $    195.65 |
| Net Other Fees | $    100.00 |
| Corporate Advance | $    586.00 |
| Foreclosure Fees and Costs | $ 2,357.44 |
| Motion Filing Fee | $    150.00 |
| Attorneys Fees | $    750.00 |
| Total Arrearages | $15,331.50 |

Furthermore, a payment becomes due on August 1, 2009 and on the first (1st) day of every month thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the date the monthly payment is due.

    5.    Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property. The fair market value of the property pursuant to www.Zillow.com is $228,000.00, less ten percent (10%) cost of marketing, less the first secured lien resulting in insufficient equity. Therefore, the secured creditor is not adequately protected. A true and correct copy of the www.Zillow.com is attached hereto as Exhibit "A".

6.      Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

7.      Secured Creditor has incurred to date attorney's fees of approximately $750.00.

8.      Secured Creditor urges that this Court issue and Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

9.      Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached hereto as Exhibit "B" and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

10.     James F. Lisowski, Sr. has been appointed by this Court the Chapter 7 Trustee in this instant Bankruptcy proceeding.  By virtue of the position as Trustee of the estate of Debtor herein, Debtor holds title to the subject property in that capacity.  To the extent the relief sought herein is granted, Respondent, James F. Lisowski, Sr., Trustee, is bound any such judgment.

11.     This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section 362(d).

WHEREFORE, Secured Creditor prays judgment as follows:

(1)     For an order granting relief from the Automatic Stay, and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed, including necessary action to obtain possession of the Property.

(2)     That a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order granting relief from the automatic stay.

(3)     In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain payments.

(4)     For attorneys' fees and costs of suit incurred herein.

(5)     For such other and further relief as this Court deems appropriate.

DATED _____7/29/09_____.

WILDE & ASSOCIATES

By _____

**GREGORY L. WILDE, ESQ.**
Attorney for Secured Creditor
208 South Jones Boulevard
Las Vegas, Nevada 89107



## National Default Servicing Corporation
2525 E. Camelback Road, Suite 200
Phoenix, Arizona 85016

Phone (602) 264-6101
Fax (602) 264-6209

July 22, 2009

Tiffany and Bosco
2525 E. Camelback Road, 3rd Floor
Camelback Esplanade II
Phoenix, AZ 85016-4237

|  | RE: | NDSC No. | : | 09-91571-US-NV |
|---|---|---|---|---|
|  |  | Loan No. | : | 6800014174 |
|  |  | Inv./Agency | : | Conv Fix Ins. |
|  |  | Borrower | : | OSORIO |
|  |  | Prop. Address | : | 6857 N CHIEFTAIN ST |
|  |  |  |  | LAS VEGAS, NV 89149 |

Dear Tiffany and Bosco,

***National Default Servicing Corporation*** hereby requests your firm to initiate the appropriate bankruptcy action for the above referenced file on behalf of our client, U.S. Bank Home Mortgage. All pleadings should be filed in the name of **U.S. Bank, N.A., it's Successors and/or Assigns, 4801 Frederica Street, Owensboro, KY 42301** (please contact our office for instructions on FHLMC loans). Therefore, please proceed with the following action as outlined below. **You are being retained as local bankruptcy counsel due to your expertise in the handling of these types of matters. We are expecting you to audit and fully analyze each referral to determine the best course of action based upon the facts of the case and the peculiarities of your jurisdiction. After auditing and analyzing this file, if you feel that any additional steps other than those already requested herein should be taken to protect the client's interest, please contact us immediately to discuss those additional steps and to obtain prior written approval to proceed with the same.**

| | |
|---|---|
| ✓ **Motion for Relief** | ☐ **File POC & Plan Review** |
| ☐ **File an Objection to the Plan** | ☐ **Attend Creditor's Meeting** |
| ☐ **Other** | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Chapter | : | 7 | Date Filed | : | 05/26/09 |
| Case No. | : | 09-18736 | Court | : | District of Nevada - Las Vegas |
| Debtor Attorney | : | Rodney K. Okano | Trustee | : | JAMES F LISOWSKI |
| Meeting of Creditors | : | | Confirm. Hearing | : | |
| POC Deadline | : | | | | |

On all Proof of Claim referrals, please obtain and review the debtor's chapter 13 bankruptcy plan. Please advise this office immediately if an Objection to the Plan is necessary.

09-91571-US-NV
6800014174
OSORIO

If the requested action is a Motion for Relief from Stay, your office has the authority to enter into an Agreed Order under the following parameters:

1. Loan must be less than five (5) months post-petition delinquent,
2. Six (6) month cure of post-petition arrearage with no more than one (1) month notice of default,
3. Regular monthly payments remain current, and
4. As well as any and all other normal and customary terms and conditions used in your jurisdiction to protect the client.

**It should be noted that if an amended POC is required per the terms of the Order, please amend the POC and forward a file-stamped copy to our office.** If the proposed Order exceeds these terms, you must contact this office for approval.

<u>On ALL FNMA Loans,</u> the lenders must now advise all debtors' counsel that loss mitigation options may be available. Please include this verbiage in any and all correspondence to the borrower and/or their attorney.

We request that you keep this office apprised as to the progress of the case and notify this office immediately (within 24 hours) in the event of a dismissal, discharge, or successful relief action. All correspondence must be directed to NDSC at the above-referenced address. Please submit all invoices via NewInvoice to U. S. Bank Home Mortgage. Please do not call or send documents to U.S. Bank Home Mortgage.

**Our office requires that all motions and/or proofs of claim be filed within 30 days of the referral date, and objections/responses are to be filed within 7-10 days from the referral date.**

Please acknowledge your receipt and acceptance of this request where indicated below and forward to NDSC within forty-eight (48) hours of receipt. We also ask that you provide a contact name, phone number and e-mail address for the person processing this case within your office.

If you have any questions, please contact me at . Thank you for your assistance with this matter.

Sincerely,

National Default Servicing Corporation

Justin White
Bankruptcy Processor

enclosure

2

U.S. Bank Home Mortgage
4801 Frederica Street
Owensboro, KY  42301

July 13, 2009

ndsc
attn lisa rogers

Re:  Loan Number:     6800014174
     Mortgagor:       Richard Osorio
     Case Number:     09-18736
     Chapter Filed: 07
     Date Filed:      May 26, 2009
     Investor:        Us Bank Home Mortgage

The above mortgagor is being referred to you to file a Motion for
Relief____ ✓____ Proof of Claim_____.  Please add your fees and
costs if appropriate.

Also included are the following:

____✓____Copy of Note       _culmof_       ____✓____Copy of Mortgage
____✓____Copy of Assignments               ____✓____PAY4 Screen
____✓____Bankruptcy Notice                 ____✓____BNKC Screen
_____Other                             ____✓____Breakdown of Arrears

Additional information is as follows:

Contractual Due Date:            09-01-08
Principal Balance:               214,677.20
Interest Rate:                     4.37500
Per Diem:                         25.73

The attorney that should attend the 341 Hearing is NAT'L DEFAUT SERVICING

Please send copies of all correspondence to my attention.  If questions
or delays should arise please call me at 800-449-2051

Thank You,

Jennie Stevenson
Bankruptcy Department
Bankruptcy Processor

**3270 Explorer**

U.S. BANK HOME MORTGAGE -- 515

Loan Number: 6800014174                                          Borrower Name: OSORIO,RICHARD

```
P194              C O L L E C T I O N   I N F O R M A T I O N        07/10/09
LN 6800014174
NAME R OSORIO   INV-LN 050-001-6800014174 DUE 09-01-08 TYPE 13-A
BR 52 MAN B P-TYPE 1 INT .0437500 FIRST PB    214,677.20  2ND PB           .00
ORIG MTG   214967  LN DATE 05-12-05   TERM 360   MO P&I     782.68 PAY PER 12

BILL  RICHARD OSORIO                 TEL B 702-655-5391  702-731-3311
NAME  VERONICA OSORIO                TAX NAME RICHARD    OSORIO
&     6857 N CHIEFTAIN ST            PROPERTY   7408     DELECTABLE COUR
ADDR  LAS VEGAS             NV 89149 ADDRESS  LAS VEGAS            NV 89149
      AMOUNTS DUE                    ASM 00-00-00 MAT 06-35  XFER DEED   -  -
DUE DATE       09-01-08        BALANCES              STOPS
REG PAYMENT     1005.71   SUSPENSE         .00   PROCESS   H
MONTHS              11    RES ESC          .00   CASHIER   4    TIMES 5
TOT REG PAY    11013.51   HUD BAL          .00   DISB      0
ACCRUED LC      195.65    ESC ADV      1073.46   BD CK     0
                         REP RES          .00   PIF       0
NSF BAL           .00    REG ESC          .00   FC        0    TRACK  S
OTHER FEE       80.00                           NOTICE    2
TOTAL DUE     11289.16                          ANALYZE   0
LC FACTR .05000 MAX LC AMT 9999.99 MAX LC RATE .00000  L/C       8
LC CODE  A      MIN LC AMT    1.00 GRACE DAYS       PMT/BD CK TAB 221122121122
REMINDER DAYS         FINAL NOTICE DAYS      DELQ TAB THRU 01-09 000000011111
   ACTIVE B/R - ENTER NEXT TRAN  PXXX6800014174          NOT ASSUMABLE
```

**3270 Explorer**

U.S. BANK HOME MORTGAGE – 515

Loan Number: 6800014174                                    Borrower Name:  OSORIO,RICHARD

```
PAY4 6800014174    AS-OF 05/26/09  PAYOFF CALCULATION TOTALS 07/10/09  12:27:00
NAME R  OSORIO    CONTACT NAME RICHARD OSORIO
-------------------------------------------------------------------------------
PRINCIPAL BALANCE        214,677.20         ----------- RATE CHANGES ----------
INTEREST 05/26/09          7,687.42  CALC  INT FROM    RATE      AMOUNT
PRO RATA MIP/PMI                .00         08/01/08   4.37500    7,687.42
ESCROW ADVANCE             1,073.46         05/26/09
ESCROW BALANCE                  .00
SUSPENSE BALANCE                .00
HUD BALANCE                     .00
REPLACEMENT RESERVE             .00
RESTRICTED ESCROW               .00
TOTAL-FEES                   14.00  W 1
ACCUM LATE CHARGES          195.65
ACCUM NSF CHARGES               .00
OTHER FEES DUE               80.00
PENALTY INTEREST                .00
FLAT/OTHER PENALTY FEE          .00         TOTAL INTEREST          7,687.42
CR LIFE/ORIG FEE RBATE          .00         TOTAL TO PAYOFF       224,283.73
RECOVERABLE BALANCE         556.00  NUMBER OF COPIES: 1    PRESS PF1 TO PRINT
-------------------------------------------------------------------------------
MULTIPLE PI CHANGE PERIODS CROSSED - CALCULATIONS ARE SUSPECT
-------------------------------------------------------------------------------
```

Printed By: KBEP1  on 7/13/2009 11:27:02 AM                            Page 1 of 1

```
BANKRUPTCY PROOF OF CLAIM   (PRE-PETITION)                07/13/09  12:27:12

BANKRUPTCY CASE NUMBER: 09-18736           CHAPTER: 07
         FILING DATE: 05/26/09
         LOAN NUMBER: 6800014174   MTGR SSN: 561751073 CO-MTGR SSN: 60629742
9
         LOAN TYPE: CONV RES

ATTORNEY:  NATIONAL DEFAULT        COURT:    U.S.BANKRUPTCY COURT
           TITLE SERVICES                    OFFICE OF THE CLERK
           FILE NUMBER 50124                 333 LAS VEGAS BLVD. S.
           LOS ANGELES         CA
           90074
                                             LAS VEGAS
                                             NV  89101




MORTGAGOR  RICHARD OSORIO         TRUSTEE:  JAMES F LISOWSKI JR
           VERONICA OSORIO
           6857 N CHIEFTAIN ST              POB 95695
           LAS VEGAS            NV
           89149
                                             LAS VEGAS
                                             NV  89193

PROPERTY ADDRESS:     7408  DELECTABLE COUR LAS VEGAS        NV 89149

CLAIMED   ACKNOWLEDGED  CONFIRMED   CLAIM TOTAL  CONFIRMED TOTAL  PRIN BALANCE
07/08/09                                  .00            .00      214,677.20

---------------- PAYMENTS -------------------- --------- LATE CHARGES -------
DUE DATE THRU  DUE DATE   AMOUNT      TOTAL  NUM  AMOUNT              TOTAL

PAYMENT TOTALS:                        .00  000                       .00

------------------------------- FEES ----------------------------------------

FEE TYPE  FEE DESCRIPTION     CLAIMED    CONFIRMED  AMOUNT PAID

FEE TOTALS:                     .00         .00       .00
```

```
R  OSORIO     DUE 09/01/08  PMT   1,005.71 TYPE CONV. RES.   ARM    MAN B
7408 DELECTABLE COUR     LAS VEGAS NV 89149                    GROUP B__
-DEBT--------------------* POST-PETITION PAYMENTS *-------------PRO EP1------
RECEIVED  PP PMTS EFF DATE  1098   CHECK DATE / NUMBER    L/C ADJ  CNT REASON
     .00   00   MM/DD/YY        MM/DD/YY  _____     .00   0    _
PMTS   PMT AMT    L/C PD   SUSPENSE  NSF PD    ESCROW   ADTL PRIN   OVR
 1    1005.71      .00       .00      .00       .00        .00     1

PLAN 1:  AMOUNT   DUE DATE     PLAN 2:  AMOUNT    DUE DATE
          .00   MM/DD/YY                 .00   MM/DD/YY    PMT  1 OF  0
------------------* PRESS PF2 FOR ADDITIONAL MESSAGES *---------------------
POST-PETITION PAST DUE 319 DAYS      DIST-TYPE = 1 INTEREST-ONLY LOAN
SUSPENDED FORECLOSURE                CH 7
PROC STOP = H  SEE BANKRUPTCY        LATE CHARGE ACCRUAL STOP = 8
-SUSP-------------------------------------------------* POST-PETITION *------
TRUSTEE SUSP:       .00               DUE DATE  PAYMENT  LATE CHG
                                      09-01-08  1005.71    39.13
DEBTOR SUSP:        .00  00  PP-PMTS
   POST 1 DUE:           PMT
   POST 2 DUE:           PMT
LATE CHARGES DUE:   195.65  NSF FEES DUE:      .00
MSP SUSPENSE:       .00  GRACE DAYS:    PROCESSOR: STEVENSON, JENNIE
```

GG242@DT-DHGNXC1-745                          Jul 17, 2009 12:39:35 PM

```
13-A CONV. RES. ARM    PER/CLS/OFF  B/00/52 AGE:  4Y  2M IR:  4.37500 INV: 050
DUE( 11)   11,013.51 DUE 09/01/08(  8)(08/12)  ASSUM:        ACQ:05/25/05
LATE CHRG    195.65 PAYMT     @   1,005.71 P: 7408 DELECTABLE COUR
BAD CK FEES      .00 L/C AMT        39.13  LAS VEGAS NV 89149
OTHER FEES     80.00 PAYMT + LC  1,044.84 M:
TOT DUE   11,289.16* PRIN BAL   214,677.20
SUSPENSE       .00 P&I          782.68   6857 N CHIEFTAIN ST
NET DUE   11,289.16 DLQ  5 TIME, PAY  7 DAY   LAS VEGAS NV 89149
C/S 101   RICHARD OSORIO                      702-655-5391
C/D 07/09 VERONICA OSORIO          B  MTGR WORK   702-731-3311


---------------------- * ADDITIONAL MESSAGES * ----------------WU: P ----
DIST-TYPE = 1 INTEREST-ONLY LOAN     ACTIVE CH 7 BANKRUPTCY
CASHIER STOP 4                       SUSPENDED FORECLOSURE
-----MORT--------------------* MORTGAGOR *-------------------------------
MORTGAGOR: RICHARD OSORIO            SSN/TIN: 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    CII:
  CO-MTGR: VERONICA OSORIO           SSN/TIN: 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    CII:
    PHONE: (702)655-5391  (702)731-3311B  ASM DATE: 00/00/00
 PAY HIST: 221122121122             ACQ DATE: 05/25/05
 DELQ TAB: 000000011111      TRNFR DEED DATE: 00/00/00  OCC STATUS: 5
ORIG MTGR:                          CBR: CODE 4 STAT 84  COMP:
```

R  OSORIO        1ST PMT 07/01/05   INV 050/001  TYPE CONV. RES.    ARM      MAN B
V  OSORIO        CUR PMT 09/01/08  PB      214,677.20    IR  4.37500          GRP ZBM

----------------------* HISTORY OF PAYMENTS *-----------------------------

| PMT DT | 09/01/08 | 12/01/08 | 07/01/09 | 12/01/09 |
|---|---|---|---|---|
| IR | 4.37500 | 4.37500 | 3.37500 | 3.37500 |
| P&I | 782.68 | 782.68 | 603.78 | 603.78 |
| COUNTY | 178.60 | 192.89 | 192.89 | 192.89 |
| CITY | 0.00 | 0.00 | 0.00 | 0.00 |
| HAZARD | 29.25 | 31.33 | 31.33 | 31.33 |
| MI | 0.00 | 0.00 | 0.00 | 0.00 |
| LIEN | 0.00 | 0.00 | 0.00 | 0.00 |
| OS | 15.18 | 15.01 | 15.01 | 0.00 |
| MISC | 0.00 | 0.00 | 0.00 | 0.00 |
| BSC | 0.00 | 0.00 | 0.00 | 0.00 |
| A&H | 0.00 | 0.00 | 0.00 | 0.00 |
| LIFE | 0.00 | 0.00 | 0.00 | 0.00 |
| REPL | 0.00 | 0.00 | 0.00 | 0.00 |
| HUD | 0.00 | 0.00 | 0.00 | 0.00 |
| 2 P&I | 0.00 | 0.00 | 0.00 | 0.00 |
| NET | 1,005.71 | 1,021.91 | 843.01 | 828.00 |

PAYMNT
CHANGE
REASON

```
-----------------------------------------------------------------------------
PRINCIPAL BALANCE        214,677.20      ----------- RATE CHANGES ----------
INTEREST 08/01/09          9,034.36      INT FROM     RATE       AMOUNT
PRO RATA MIP/PMI                .00      08/01/08   4.37500      7,826.80
ESCROW ADVANCE             2,344.46      06/01/09   3.37500      1,207.56
ESCROW BALANCE                  .00      08/01/09
SUSPENSE BALANCE                .00
HUD BALANCE                     .00
REPLACEMENT RESERVE             .00
RESTRICTED ESCROW               .00
TOTAL-FEES                    14.00  W 1
ACCUM LATE CHARGES           195.65
ACCUM NSF CHARGES               .00
OTHER FEES DUE                80.00
PENALTY INTEREST                .00
FLAT/OTHER PENALTY FEE          .00      TOTAL INTEREST           9,034.36
CR LIFE/ORIG FEE RBATE          .00      TOTAL TO PAYOFF        226,931.67
RECOVERABLE BALANCE          586.00  NUMBER OF COPIES: 1    PRESS PF1 TO PRINT
-----------------------------------------------------------------------------

MULTIPLE PI CHANGE PERIODS CROSSED - CALCULATIONS ARE SUSPECT
-----------------------------------------------------------------------------
```

```
REID 6800014174           REINSTATEMENTS QUOTED  CH07     07/16/09  15:38:34
R  OSORIO   MAN B INV 050/001/6800014174  TYPE CONV. RES, ARM              FC 0
DUE 09-01-08  CURRENT: P&I        782.68   ESC.        223.03   INT.  4.37500
----------------- MOST RECENT QUOTE ------ PRIOR QUOTE ---------DATA AMOUNTS-
DATE OF QUOTE              07-17-09                   TAX ADV        578.67
REINSTATE ON              07-17-09                    HAZ ADV
   NEXT DUE DATE WILL BE   08-01-09                   MIP
PAYMENTS DUE                    11                    F/C EXP.
TOTAL PAYMENT AMOUNT      11,013.51                    TOTAL         578.67
CLOSING INT/DSI                .00                    ATTY ADV
ACCRUED LT CHG    ( I )     195.65  (   )             MSP SUSP          .00
LT CHG FORECASTED ( I )        .00  (   )              TRUSTEE          .00
BAD CHECK         ( I )        .00  (   )              DEBTOR           .00
RESTRICTED ESCROW ( I )        .00  (   )
NET OTHER FEES    ( I )     100.00  (   )
                                                     MTGR RC        586.00
SUSPENSE          ( I )        .00  (   )             ADV BAL      2,344.46
                                                     INV ADV
MTGR REC CORP ADV ( I )     586.00  (   )
** TOTAL DUE             11,895.16                     TOTAL       2,344.46
PENDING P&I                                 ARM PENDING P&I    603.78 07-01-09
PENDING ESC.       239.23  12-01-08         BUYDOWN PENDING
MTGR RECOVERABLE CORPORATE ADVANCE
ACTIVE BANKRUPTCY                            LAST UPDATED BY ZBM 07/17/09  15:38
```

GG242@DT-DHGNXC1-745                          Jul 17, 2009 12:38:42 PM

20050512-0004461

Assessor's Parcel Number: 125-17-310-019

~~Escrow #2182756~~

~~Recording Requested By:~~

R.N.B., INC., DBA CORNERSTONE
MORTGAGE, A NEVADA CORPORATION

VS BANK

Fee: $35.00
N/C Fee: $25.00

05/12/2005        14:41:36
T20050000099
Requestor:
FIRST AMERICAN TITLE COMPANY OF NEVADA

And When Recorded Return To:
R.N.B., INC., DBA CORNERSTONE
MORTGAGE, A NEVADA CORPORATION
7942 W. SAHARA
LAS VEGAS, NEVADA 89117
Loan Number: 6800014174

Frances Deane            CAE
Clark County Recorder   Pgs: 22

C 22

17

———————————————————— [Space Above This Line For Recording Data] ————————————————————

# DEED OF TRUST

MIN: 1000212-6800014174-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated   MAY 2, 2005                  , together with all Riders to this document.

(B)  "Borrower" is RICHARD OSORIO AND VERONICA OSORIO, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.

(C)  "Lender" is R.N.B., INC., DBA CORNERSTONE MORTGAGE

Lender is a   NEVADA CORPORATION                                            organized
and existing under the laws of  NEVADA
Lender's address is 7942 W. SAHARA, LAS VEGAS, NEVADA 89117

(D)  "Trustee" is FIRST AMERICAN TITLE COMPANY OF NEVADA
180 CASSIA WAY #502, HENDERSON, NEVADA 89014

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  "Note" means the promissory note signed by Borrower and dated   MAY 2, 2005

---

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic €Forms 800-649-1362
Form 3029 1/01                                Page 1 of 15                                www.docmagic.com

Nv3029.mzd.1.tem

The Note states that Borrower owes Lender    TWO HUNDRED FOURTEEN THOUSAND NINE HUNDRED SIXTY-SEVEN AND 00/100          Dollars (U.S. $ 214,967.00      ✓ ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JUNE 1, 2035         ✓    .

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider      ☐ Condominium Rider                ☐ Second Home Rider
☐ Balloon Rider             ☒ Planned Unit Development Rider    ☐ Other(s) [specify]
☐ 1-4 Family Rider          ☐ Biweekly Payment Rider

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
          COUNTY            of             CLARK          :
        [Type of Recording Jurisdiction]                             [Name of Recording Jurisdiction]
LOT 19 IN BLOCK 1 OF ASTORIA AT TOWN CENTER- SOUTH, AS SHOWN BY
MAP THEREOF ON FILE IN BOOK 115 OF PLATS, PAGE 58, IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA AND
AMENDED BY CERTIFICATE OF AMENDMENT RECORDED MAY 19, 2004 OF
OFFICIAL RECORDS AS DOCUMENT NO. 03225
A.P.N. #: 125-17-310-019

which currently has the address of  7408 DELECTABLE COURT
                                      [Street]

          LAS VEGAS         , Nevada      89149     ("Property Address"):
            [City]                           [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS       DocMagic *EForms* 800-649-1362
Form 3029 1/01                              Page 3 of 15                      www.docmagic.com

Nv3029.mzd3.tem

institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an

Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this

---

Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as

---

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                    Page 6 of 15

DocMagic €Ramms 800-649-1362
www.docmagic.com

Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums

for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01
Page 8 of 15

DocMagic *Forms* 800-649-1362
www.docmagic.com

Nv3029.mzd.8.xem

is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security

Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01
Page 10 of 15

*DocMagic* ⚙️Σⁱⁱⁿⁿ 800-649-1362
www.docmagic.com

Nv3029.mzd.10.tem

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01
Page 11 of 15

DocMagic *eFarms* 800-649-1362
www.docmagic.com

NV3029.mzd.11.tem

the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall**

---

cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $               .

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
RICHARD OSORIO                    -Borrower

_____ (Seal)
VERONICA OSORIO                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

Witness:

_____

Witness:

_____

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic *eForms* 800-649-1362
Form 3029 1/01                                    Page 14 of 15                        www.docmagic.com

State of Nevada
County of    CLARK

This instrument was acknowledged before me on *May 4, 2005*
by   RICHARD OSORIO, VERONICA OSORIO



NOTARY PUBLIC
STATE OF NEVADA
County of Clark
MELVINE HUMPHREYS-GREY
No: 00-63772-1
My Appointment Expires July 12, 2008

(Seal)

_____
Notary Public

My commission expires: *July 12, 2008*

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                    Page 15 of 15

*DocMagic* 800-649-1362
www.docmagic.com

Nv3029.mzd.15.tem

**EXHIBIT 'A'**

**Parcel I:**

Lot 19 in Block 1 of Astoria at Town Center – South, as shown by map thereof on file in Book 115 of Plats, Page 58, in the Office of the County Recorder of Clark County, Nevada and amended by Certificate of Amendment recorded May 19, 2004 of Official Records as Document No. 03225.

**Parcel II:**

An easement for ingress and egress over private streets and limited use common elements as shown and delineated on said map.

MIN: 1000212-6800014174-3                    Loan Number: 6800014174

# ADJUSTABLE RATE RIDER
### (1 Year Treasury Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this  2nd  day of     MAY, 2005       ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to  R.N.B., INC., DBA CORNERSTONE
MORTGAGE, A NEVADA CORPORATION, A NEVADA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

7408 DELECTABLE COURT, LAS VEGAS, NEVADA 89149
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of      5.500%.  The Note provides for changes
in the interest rate and the monthly payments as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)    Change Dates
The interest rate I will pay may change on the  1st  day of  JUNE, 2008       ,
and on that day every 12th month thereafter.  Each date on which my interest rate could change is called a
"Change Date."
(B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the
weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as
made available by the Federal Reserve Board.  The most recent Index figure available as of the date 45 days
before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon
comparable information.  The Note Holder will give me notice of this choice.
(C)    Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND 750/1000             percentage points (    2.750%) to the Current Index.
The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point

MULTISTATE ADJUSTABLE RATE RIDER--ARM 5-2--Single Family
Fannie Mae/Freddie Mac MODIFIED INSTRUMENT
FANNIE MAE ARM 4-2/5-2/6-2
Form 3111 1/01                    Page 1 of 3

*DocMagic* ☎*Remote 800-649-1362*
*www.docmagic.com*

(0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 7.500 % or less than 3.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000

percentage points ( 2.000 %)

from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.500 %.

(E)    Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee

MULTISTATE ADJUSTABLE RATE RIDER—ARM 5-2-Single Family
Fannie Mae/Freddie Mac MODIFIED INSTRUMENT
FANNIE MAE ARM 4-2/5-2/6-2
Form 3111 1/01                                          Page 2 of 3

DocMagic €Forms 800-649-1362
www.docmagic.com

Us3111.rid.2.xsm

to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
RICHARD OSORIO          -Borrower

_____ (Seal)
VERONICA OSORIO          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--ARM 5-2--Single Family
Fannie Mae/Freddie Mac MODIFIED INSTRUMENT
FANNIE MAE ARM 4-2/5-2/6-2
Form 3111 1/01                    Page 3 of 3

DocMagic eFurms 800-649-1362
www.docmagic.com

Us3111.rid.3.tem

## ALLONGE

LOAN #:  6800014174

Borrower(s):  RICHARD OSORIO, VERONICA OSORIO

Property Address:  7408 DELECTABLE COURT, LAS VEGAS, NEVADA 89149

Principal Balance:  $214,967.00

Loan Date:  MAY 2, 2005

PAY TO THE ORDER OF

U.S. BANK N.A.

_____
                              Without Recourse

Company Name: R.N.B., INC., DBA CORNERSTONE MORTGAGE, A NEVADA CORPORATION

By: _____          *President*
                    (Name)                              (Title)
RICHARD N. BELL, PRESIDENT

Multistate Note Allonge

Loan Number: 6800014174

# SIGNATURE AFFIDAVIT AND AKA STATEMENT

## SIGNATURE AFFIDAVIT

I, RICHARD OSORIO
certify that this is my true and correct signature:

RICHARD OSORIO
Borrower

Sample Signature

## AKA STATEMENT

I, RICHARD OSORIO
further certify that I am also known as:

Name Variation (Print)                    Sample Signature (Variation)

Name Variation (Print)                    Sample Signature (Variation)

Name Variation (Print)                    Sample Signature (Variation)

Name Variation (Print)                    Sample Signature (Variation)

Name Variation (Print)                    Sample Signature (Variation)

Name Variation (Print)                    Sample Signature (Variation)

Name Variation (Print)                    Sample Signature (Variation)

State of NEVADA
County of CLARK

On May 4, 2005 , before me, Melone Humphreys-Grey
personally appeared RICHARD OSORIO

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
MELVINE HUMPHREYS-GREY
No. 00-43972-1
My Appointment Expires July 12, 2008

SIGNATURE AFFIDAVIT AND AKA STATEMENT

DocMagic Forms 800-649-1362
www.docmagic.com

Aka.1st

Loan Number: 6800014174

# SIGNATURE AFFIDAVIT AND AKA STATEMENT

## SIGNATURE AFFIDAVIT

I, VERONICA OSORIO
certify that this is my true and correct signature:

VERONICA OSORIO
Borrower

Sample Signature

## AKA STATEMENT

I, VERONICA OSORIO
further certify that I am also known as:

Name Variation (Print)                          Sample Signature (Variation)

Name Variation (Print)                          Sample Signature (Variation)

Name Variation (Print)                          Sample Signature (Variation)

Name Variation (Print)                          Sample Signature (Variation)

Name Variation (Print)                          Sample Signature (Variation)

Name Variation (Print)                          Sample Signature (Variation)

Name Variation (Print)                          Sample Signature (Variation)

State of NEVADA
County of CLARK
On *May 4, 2015* , before me, *Melvine Humphreys-Grey*
personally appeared VERONICA OSORIO

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
MELVINE HUMPHREYS-GREY
No. 06-5177-1
My Appointment Expires July 12, 2008

DocMagic ⒸRⓈⓉⓊⓂⓈ 800-649-1362
www.docmagic.com

Aka.lsf

# Uniform Underwriting and Transmittal Summary
## CORNERSTONE MORTGAGE COMPANY

### I. Borrower and Property Information

| | | |
|---|---|---|
| Borrower Name | Richard Osorio | SSN: 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 |
| Co-Borrower Name | Veronica Osorio | SSN: 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 |
| Property Address | 7408 Delectable Court, Las Vegas, NV 89149 | |

**Property Type**
- [ ] 1 Unit
- [ ] 2-4 Units
- [ ] Condominium
- [X] PUD   [ ] CO-OP   Project Name **Tapistry**
- [ ] Manufactured Housing
  - [ ] Single Wide   [ ] Multiwide

**Project Classification**
- [ ] A/III Condo   [ ] E PUD   [ ] I CO-OP
- [ ] B/II Condo   [ ] F PUD   [ ] 2 CO-OP
- [ ] C/I Condo

**Occupancy Status**
- [X] Primary Residence
- [ ] Second Home
- [ ] Investment Property

**Additional Property Information**
| | | |
|---|---|---|
| Number of Units | | 269, 709 |
| Sales Price | $ | 263, 230.00 |
| Appraised Value | $ | ~~264,000.00~~ 274,500 |

**Property Rights**
- [X] Fee Simple
- [ ] Leasehold

### II. Mortgage Information

**Loan Type**
- [X] Conventional
- [ ] FHA
- [ ] VA
- [ ] USDA/RHS

**Amortization Type**
- [ ] Fixed Rate - Monthly Payments
- [ ] Fixed Rate - Bi-Weekly Payments
- [ ] Balloon
- [X] ARM (type) **3/1**
- [ ] Other (specify)

**Loan Purpose Type**
- [X] Purchase
- [ ] Cash-Out Refinance
- [ ] Limited Cash-Out Refinance (Fannie)
- [ ] No Cash-Out Refinance (Freddie)
- [ ] Home Improvement
- [ ] Construction to Permanent

**Lien Position**
- [X] First Mortgage
  - Amount of Subordinate Financing
  - $ ~~52646.00~~ 53,741
  - (If HELOC, include balance and credit limit)
- [ ] Second Mortgage

**Note Information**
| | |
|---|---|
| Original Loan Amount $ | ~~210,584.00~~ 214967 |
| Initial P&I Payment $ | ~~985.27~~ ~~985.18~~ |
| Initial Note Rate | 5.500% |
| Note Term (in months) | 360 ~~333~~ |

**Mortgage Originator**
- [X] Seller
- [ ] Broker
- [ ] Correspondent

Broker/Correspondent Name and Company Name

**Buydown**
- [ ] Yes
- [X] No

Terms

**If Second Mortgage**
Owner of First Mortgage
- [ ] Fannie Mae   [ ] Freddie Mac
- [ ] Seller/Other

Original Loan Amount of First Mortgage

### III. Underwriting Information

| | |
|---|---|
| Underwriter's Name  *Denald Obden* 4/18/05 | Appraiser's Name/License #   |   Appraisal Company Name |

| Stable Monthly Income | Borrower | Co-Borrower | Total | | |
|---|---|---|---|---|---|
| Base Income | $ 2,340.00 | $ 1,733.00 | $ ~~4,073.00~~ | Present Housing Payment | $ 1,619.00 |
| Other Income | $ 2,340.00 | $ | $ | Proposed Monthly Payments | |
| Positive Cash Flow (subject property) | $ | $ | $ | Borrower's Primary Residence: | 985.27 |
| | | | | First Mortgage P&I | 985.10 |
| Total Income | $ 2,340.00 | $ 1,733.00 | $ ~~4,073.00~~ 4,073.0 | Second Mortgage P&I | $ ~~357.5/~~ 850.26 |
| | | | | Hazard Insurance | $ ~~22.00~~ 70.00 |
| | | | | Taxes | $ ~~178.2/~~ 150.00 |
| **Qualifying Ratios** | | **Loan-to-Value Ratios** | | Mortgage Insurance | |
| Primary Housing Expense/Income | 38.435 % | LTV | 80.000 % | HOA Dues | 30.00 |
| Total Obligations/Income | 38.435 % | CLTV/TLTV | 100.000 % | Lease/Ground Rent | $ |
| Debt-to-Housing Gap Ratio (Freddie) | % | HCLTV/HTLTV | 100.000 % | Other | $ |
| | | | | Total Primary Housing Expense | ~~1,565.44~~ 1569.65 |
| **Qualifying Rate** | | **Level of Property Review** | | Other Obligations: | |
| [X] Note Rate | 5.500 % | [ ] Exterior/Interior | | Negative Cash Flow (subject property) | $ |
| % Above Note Rate | % | [ ] Exterior Only | | All Other Monthly Payments | 1569.15 |
| % Below Note Rate | % | [ ] No Appraisal | | Total All Monthly Payments | ~~1,565.44~~ |
| [ ] Brought-Down Rate | | Form Number: | | | |
| [ ] Other | % | | | Borrower Funds to Close | |
| | | | | Required | $ ~~29,243.73~~ |
| **Risk Assessment** | | **Escrow (T&I)** | | Verified Assets | $ |
| [ ] Manual Underwriting | | [ ] Yes [X] No | | Source of Funds | |
| [ ] AUS | | | | No. of Months Reserve | |
| [ ] DU [ ] LP [ ] Other | | | | Interested Party Contributions | % |
| AUS Recommendation | *accept* | | | | |
| DU Case ID/LP AUS Key# | 42909546 | | | | |
| LP Doc Class (Freddie) | *Standard* | Community Lending/Affordable Housing Initiative | [ ] Yes [X] No | | |
| Representative Credit/Indicator Score | 729/728 | Home Buyers/Homeowning Education Certificate in file | [ ] Yes [X] No | | |

**Underwriter Comments**

1350 × 80 = 1080.00 × 26 = 28080 ÷ 12 = 2,340.36 ~~2,340.33~~    *OFAC cleared*

10.00 × 80 = 800.00 × 26 = 20,800 ÷ 12 = 1,733.00

2005

3

### IV. Seller, Contract, and Contact Information

| | | |
|---|---|---|
| Seller Name | CORNERSTONE MORTGAGE | Contact Name  Leisa Missamore |
| Seller Address 7942 W Sahara Ave | | Contact Title  Loan Closer |
| LAS VEGAS, NV 89117 | | Contact Phone Number  (702) 873-2523  ext. 225 |
| Seller No. 1055000000 | Investor Loan No. | |
| Seller Loan No. | | Contact Signature |
| Master Commitment No. | | |
| Contract No. | | Date |

Loan Number: 6800014174

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this     2nd     day of MAY, 2005     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to   R.N.B., INC., DBA CORNERSTONE MORTGAGE, A NEVADA CORPORATION, A NEVADA CORPORATION (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

7408 DELECTABLE COURT, LAS VEGAS, NEVADA 89149
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

ASTORIA AT TOWN CENTER-SOUTH
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

---

MULTISTATE PUD RIDER–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                 Page 1 of 3

*DocMagic* *eFormss* 800-649-1362
www.docmagic.com

Us3150.rid.1.tem

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.  Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.  Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:  (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Us3150.rid.2.wnn

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
RICHARD  OSORIO          -Borrower

_____ (Seal)
VERONICA  OSORIO          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                          Page 3 of 3

DocMagic *Formss* 800-649-1362
www.docmagic.com

MIN: 1000212-6800014174-3          Loan Number: 6800014174

# INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE NOTE

### (1-Year Treasury Index - Rate Caps)
### (Assumable during Life of Loan)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MAY 2, 2005                          LAS VEGAS          NEVADA
      [Date]                                    [City]               [State]

7408 DELECTABLE COURT, LAS VEGAS, NEVADA 89149
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 214,967.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  R.N.B., INC., DBA CORNERSTONE MORTGAGE, A NEVADA CORPORATION, A NEVADA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     5.500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month on the    1st  day of the month beginning on  JULY 1         , 2005          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on  JUNE 1, 2035         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  7942 W. SAHARA, LAS VEGAS, NEVADA 89117

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $ 985.27          . This amount may change in accordance with subsection (C) below.

---

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE · 1-Year Treasury Index
(Assumable Life of Loan) · Single Family · Freddie Mac MODIFIED INSTRUMENT
Form 5506 5/04 (rev. 1/05)                    Page 1 of 5

*DocMagic eFᴏʀᴍs 800-649-1362*
*www.docmagic.com*

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate I must pay.

The First P&I Payment Due Date is  JULY 1, 2015                .

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the  1st  day of  JUNE, 2008               , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

**(B) The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 750/1000                               percentage point(s) (    2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than      7.500 % or less than          3.500 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than  TWO AND 000/1000 percentage point(s) (    2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than         11.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index
(Assumable Life of Loan) - Single Family - Freddie Mac MODIFIED INSTRUMENT
Form 5506 5/04 (rev. 1/05)                              Page 2 of 5

*DocMagic* *☎800-649-1362*
*www.docmagic.com*

I\5506.no4.2.sem

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be

     5.000  % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index
(Assumable Life of Loan) - Single Family - Freddie Mac MODIFIED INSTRUMENT
Form 5506  5/04  (rev. 1/05)                                        Page 3 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us5506.not.3.xml

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index
(Assumable Life of Loan) - Single Family - Freddie Mac MODIFIED INSTRUMENT
Form 5506  5/04  (rev. 1/05)                      Page 4 of 5

DocMagic *eFerrous* 800-649-1362
*www.docmagic.com*

Us5506.txt.4.tem

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
RICHARD OSORIO          -Borrower

_____ (Seal)
VERONICA OSORIO         -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

PAY TO THE ORDER OF:
U.S. BANK N.A. WITHOUT RECOURSE

R.N.B., INC., DBA CORNERSTONE MORTGAGE, A NEVADA
CORPORATION, A NEVADA CORPORATION

BY: _____
    RICHARD N. BELL, PRESIDENT                    [Sign Original Only]

ITS: _____

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index
(Assumable Life of Loan) - Single Family - Freddie Mac MODIFIED INSTRUMENT
Form 5506  5/04  (rev. 1/05)                    Page 5 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

Uc5506.not.5.tem

**≋ Zillow.com**



**6857 N Chieftain St**
Las Vegas NV 89149

3 beds, 3.0 baths, 2,118 sq ft
Zestimate%: **$228,000**

Get a free professional valuation
**My Estimate:**

**Monthly Payment: $ 1,014 edit**
Current Rates

**Bird's Eye View**

See a

**Home Info**
**Public Facts:**
- Single family
- 3 beds
- 3.0 bath
- 2,118 sqft
- Lot 6,098 sqft
- Built in 2005

**Neighborhood: Centennial Hills**

**Nearby Schools:**

**District:**
  Clark
**Primary:**
  Darnell, Marshall ...
**Middle:**
  Ralph Cadwallader ...
**High:**
  Centennial High Scho ...

See more Centennial Hills local information
See more Centennial Hills schools

**Charts & Data**

**Work with an agent from
Prudential Americana Group,
REALTORS to get a professional
estimate.**

**First Name***

**Last Name***

See all charts & data        **Email Address***

EXHIBIT 

**ZESTIMATE®: $228,000**
Value Range: $161,880 -
$241,680
30-day change: $4,500
*Zestimate updated: 07/24/2009*

**Last sale and tax info**

**Sold 10/22/2004:**
  $293,338 *
**2009 Property Tax:**
  $2,588

* Transaction not included in
Zestimate. More info
: 34 – Car-Dependent

**Phone Number***
   (          )          -
ext.
**I am***
  Please Choose One

**Message (optional)**

Or call (888) 321-0667

---

**Street Map**

**6857 North Chieftain Street, Las Vegas, NV**
  Bird's eye view and larger map for 6857 N Chieftain St
  Edit map location for 6857 N Chieftain St

**Alternate Addresses**
6857, n, no, north, chieftain, st, saint, sainte, ste, str, street, strt,
centennial hills, centennial hill s, centennial hill so, centennial hill south,
centennial hills, centennial hillso, centennial

** SECTION 362 INFORMATION SHEET **

Richard Osorio and Veronica Osorio
DEBTOR(S)

Chapter 7
Case No.: 09-18736-MKN

US Bank NA
MOVANT
PROPERTY INVOLVED IN THIS MOTION: 6857 N. Chieftain St., Las Vegas NV 89149

NOTICE SERVED ON: Debtor(s) _____x_____; Debtor (s) Counsel _____x_____; Trustee _____x_____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| $1^{st}$US Bank NA (PB$214,677.20) | 1st _____ |
| Total Encumbrances: $214,677.20 | 2nd _____ |
| APPRAISAL or OPINION as to VALUE: "Per attached valuation from www.zillow.com" $228,000.00 | Total Encumbrances: $_____ APPRAISAL or OPINION as to VALUE: |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
|---|---|
| Amount of Note: $ Interest Rate: 4.375 Duration: 30 Year Payment Per Month: $ 782.68 Date of Default: September 1, 2008 Amount of Arrearages: $15,331.50 Date of Notice of Default: January 27, 2009 SPECIAL CIRCUMSTANCES: **I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.** SUBMITTED BY: _____ SIGNATURE: | SPECIAL CIRCUMSTANCES: SUBMITTED BY: _____ SIGNATURE: _____ |

EXHIBIT